UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DARWIN GAUTHIER** | : | **CIVIL ACTION NO. 2:09-cv-572** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **WARDEN, ALLEN CORRECTIONAL CENTER** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is the application for a writ of habeas corpus by petitioner, Darwin Gauthier. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court. For the reasons discussed herein, IT IS RECOMMENDED that the application be DENIED and DISMISSED WITH PREJUDICE.

**I.    Background**

On October 21, 2002, Darwin Gauthier and Tory Perrodin, husband and wife of less than two months, had an argument in which Gauthier accused Perrodin of infidelity. *State v. Gauthier*, 916 So.2d 314, 316 (La. App. 3 Cir. 2005). The argument escalated when Gauthier forced Perrodin into his car at gunpoint. He then drove her to two separate houses wherein which he inflicted various acts of physical brutality on the victim, including punching her in the face, pistol whipping her, and burning her with a hot clothes iron. *Id.* at 316–17. At various times during the cruelty, Gauthier reinforced his threats to kill Perrodin if she lied or tried to escape. *Id.* Gauthier brought Perrodin to the hospital the following day. The triage nurse at the

hospital contacted the Calcasieu Parish Sheriff's office, who then opened an investigation. *Id.* at 317.

## II. Procedural History

Petitioner was convicted of one count of aggravated second degree battery and one count of second degree kidnapping by the Fourteenth Judicial District Court in and for the Parish of Calcasieu, State of Louisiana. The court sentenced petitioner to thirty-five years on the kidnapping conviction with the first two years to be served without the benefit of probation, parole, or suspension. The court sentenced petitioner to fifteen years on the battery conviction. The sentences were ordered to be served concurrently.

Petitioner's conviction was affirmed on direct appeal by the Third Circuit Court of Appeal. *State v. Gauthier*, 916 So. 2d 314 (La. App. 3 Cir. 2005). Petitioner applied for writs with the Louisiana Supreme Court, but the application was denied. *State v. Gauthier*, 937 So. 2d 378 (La. 2006).

On June 13, 2007, petitioner filed an application for post-conviction relief with the 14th Judicial District Court. R. at 1764–1844, 1846. Petitioner moved for leave of court to supplement his application for post-conviction relief on July 31, 2007. *See* R. at 1861, 2022.

The state district court ordered the district attorney on August 6, 2007, to file any procedural objections and/or answer to petitioner's application. The district attorney filed its objection and answer on September 5, 2007. R. at 1845–57.

On September 9, 2007, petitioner filed a motion to compel the district attorney to answer the supplemental application. Petitioner further moved the trial court to hold an evidentiary hearing on the pending application. R. at 2014.

The state district court denied petitioner's application for post-conviction relief on September 11, 2007. *State ex rel. Gauthier v. State*, 996 So. 2d 1128 (La. 2008); R. at 2015. On September 28, 2007, the trial court denied petitioner's motions to compel and to hold an evidentiary hearing. R. at 2016.

Petitioner applied for Supervisory/Remedial Writs of Review, Prohibition, or Mandamus with the Third Circuit Court of Appeal on October 26, 2007. R. at 1858–1936. The application was subsequently denied.

On February 13, 2008, petitioner again filed an Application for Supervisory Writs from the denial of his post-conviction relief application with the Third Circuit Court of Appeal. R. at 1937–2019. This second application focused on petitioner's motion to supplement his application with the trial court and his motion for an evidentiary hearing. The application was denied on February 27, 2008. App'x at 114.

Petitioner applied for writs with the Louisiana Supreme Court, but the application was denied. *State ex rel. Gauthier v. State*, 996 So. 2d 1128 (La. 2008).

### III.    Claims for Relief

Petitioner claims that he received ineffective assistance at trial in his representation and the ineffectiveness manifested itself in three particulars: (1) counsel admitted to being ill-prepared for trial; (2) counsel failed to follow up on a subpoena; and (3) the indigent defender program in Calcasieu Parish is deficient. Petitioner also claims that the evidence against him was insufficient to support a verdict of guilt and that he was denied the right to confront witnesses against him.

## IV. Law and Analysis

Federal courts of the United States are granted jurisdiction to entertain applications for writs of habeas corpus on behalf of a person in State custody only if that person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Because the appellate court adjudicated petitioner's claims on the merits, this court reviews those decisions under the deferential standard of 28 U.S.C. § 2254(d)(1). *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998).

Where the state court has reached the merits of a constitutional claim, a "writ of habeas corpus . . . shall not be granted with respect" to that claim "unless the adjudication of the claim" resulted in a decision that was either (1) contrary to clearly established federal law or unreasonably applied that law, or (2) "based on an unreasonable determination of the facts in light of the evidence" before the state court. 28 U.S.C. § 2254(d).

In order to be entitled to relief under the first standard, petitioner must demonstrate that the state court decision was "contrary to clearly established law"—that is, the "fair import" of the decision shows that the court failed to apply the controlling Supreme Court standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). To be entitled to relief under the second standard, petitioner must demonstrate "that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

The deferential standards of review elucidated above are applicable on habeas review even when the state court did not provide reasons for its decision, so long as the state court adjudicated the claim on the merits. *Id.* at 784, 85. In the absence of reasons or a written opinion, "a habeas court must determine what arguments or theories . . . could have supported[]

the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court] decision . . . ." *Id.* at 786.

### A. Ineffective Assistance of Counsel:

With respect to this claim petitioner maintains that his trial counsel, Charles St. Dizier, was ineffective in general, that counsel erred with respect to a subpoena issued to Isle of Capri Casino for information relating to the physical condition of the victim, and that counsel was appointed by the indigent defender program of Calcasieu Parish.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner must demonstrate both (1) his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Id.* at 687. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* at 687–88.

In *U.S. v. Cronic*, 466 U.S. 648 (1984), the Court recognized that the *Strickland* standard is inappropriate in some situations. Prejudice may be presumed where the defendant was completely denied counsel at a critical stage of the trial or if counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 659. A presumption of ineffectiveness must be justified by the surrounding circumstances. *Id.* at 662.

Petitioner raised the same claims of ineffective assistance of counsel to the state district court that he raises in the instant application. Thus, at this stage "[t]he pivotal question is

whether the state court's application of the *Strickland* [or *Cronic*] standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s [or *Cronic*'s] standard." *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

### 1. Representation by Charles St. Dizier

Over the course of the underlying proceeding the trial court appointed five separate attorneys to represent petitioner. The fourth attorney, Michelle Breaux, withdrew because of a conflict of interest. The trial court reappointed Charles St. Dizier as counsel on February 18, 2004. Counsel requested a continuance on May 3, 2004, on the grounds that he was ill-prepared to proceed to trial. Counsel relayed the following to the state district court:

> The long and short of it is that I got my priority list. And of course, found out the – you could say bad news – and picked up the file last Thursday. It was a box full, about a foot and a half thick.
>
> There's witnesses that we can't find, there's an investigator that was appointed to this case that I'm being told cannot really work with me because of some various conflict about which I know nothing.
>
> The long and short of it, Your Honor, is – and I've worked hard on this file, I've talked to witnesses, I've been out to the crime scene, I've been out to – you know, I've done – I've put in my time for three days.
>
> But I cannot in good conscience represent to the Court that I am ready for trial. And I'm moving for a continuance based on that.
>
> There's a witness that nobody's been able to find that I think I can find given time. And he bears – he bears on this case heavily.
>
> \*\*\*\*\*
>
> But the fact of the matter is that I do not think that Darwin Gauthier would receive a fair trial today.
>
> \*\*\*\*\*
>
> But I think that we have an excellent chance of seeing this case again based maybe not on appeal, but on post-conviction relief for ineffective counsel. And I

> would not be able to argue the fact that his counsel, if tried, today would be ineffective.

R. at 836–37, 38. The trial court ultimately denied the motion for a continuance. R. at 842. Petitioner claims that his counsel was ineffective on the basis that he admitted to being unprepared for trial.

Petitioner argues that the court should apply the *Cronic* standard for ineffective assistance of counsel—that is, he should not have to point to specific instances of prejudice so long as his attorney failed to subject the prosecution's case to meaningful adversarial testing. But that is not the standard on habeas review. The question for this court is whether the state district court's application of *Cronic* was unreasonable. There are a number of arguments and theories that could have supported the state district court's denial of this claim.

Petitioner merely points to counsel's self-assessment the week before trial. There simply is no indication that counsel failed to subject the prosecution's case to meaningful adversarial testing at trial. While counsel is especially critical of his preparation, the state court may have concluded that petitioner's four attorneys prior to St. Dizier had completed the requisite preparation as evidenced by the "box full" of discovery provided to him. Moreover, while counsel stated he was not completely prepared, he also indicated that he had learned the file, interviewed witnesses, and visited the crime scene. The state court could very well have concluded that this preparation was sufficient.

The self-assessment of counsel is not and cannot be the standard because it is inherently subjective. If such were the standard, counsel for the convicted could always be ineffective if only his or her attorney would indicate as much to the trial court prior to proceeding. Ultimately, this court must consider objective indicia of performance, and petitioner has not identified any actions or inactions at trial that demonstrate that St. Dizier failed to function as "counsel."

As discussed above, there are a number of arguments and theories that could have supported the state trial court's denial of this claim, and fairminded jurors could disagree on whether these arguments and theories are consistent with the *Cronic* standard. Thus, this claim does not entitle petitioner to relief.

### 2. Isle of Capri Casino Subpoena

Petitioner claims that his counsel at trial, St. Dizier, was ineffective insofar as he failed to pursue discovery and follow-up on the work of prior petitioner's prior attorney, Michelle Breaux.

The record reflects that petitioner, through Breaux, subpoenaed certain records from Isle of Capri Casino, specifically those dealing with an alleged insurance claim made by the victim, Tory Perrodin, who was an employee of Isle of Capri at the time of the crime. R. at 1997. Petitioner says that the records would have reflected that the victim's injuries were the result of a motorcycle accident rather than any actions of petitioner.

A hearing to show cause was set; however, Breaux moved to withdraw from the case the morning of the hearing. R. at 1998. There is nothing in the record that indicates that the hearing was ever held, and there are no documents (or statement that no such documents exist) from Isle of Capri in the record.

The victim testified at trial that she was battered by petitioner on at least two occasions prior to the date of the crimes for which petitioner was convicted. The victim testified that on an occasion prior to the date of the incident for which petitioner was convicted, she leapt from a moving vehicle being driven by petitioner at 50 to 60 miles per hour. R. at 1342. She was taken to the hospital, where she admittedly lied to the staff about the cause of the incident, telling them that she fell off a motorcycle. R. at 1343.

Petitioner presented this same claim of ineffectiveness to the state district court, and it was rejected. R. at 2005–06. It was incumbent upon petitioner to demonstrate both serious error of counsel and prejudice to the state district court. While the state district court did not provide reasons for denying the claim for relief, a number of arguments and theories could have supported it.

Isle of Capri may have voluntarily complied with the request, obviating the need for the hearing. There is no indication that counsel did not have the relevant information subject to the subpoena on file. Moreover, there is no indication that any such records actually existed. Even if the records did exist, there is no indication that they would have detailed the victim's description of her injuries. The victim admitted to lying to hospital staff about the cause of her injuries, so the state district court may have concluded that the lack of records was not prejudicial. Additionally, any hospital records would have only covered prior instance of alleged misconduct by the petitioner, not the conduct for which the defendant was charged.

Alternatively, the hospital records may have proven detrimental to the petitioner. The records may reflect that the nursing staff and doctors did not believe the victim's version of her events, suspecting physical abuse instead. Lastly, counsel for petitioner could have had the records in his possession yet made a calculated decision not to use them for fear of being perceived as berating a victim of domestic violence.

As discussed above, there are a number of arguments and theories that could have supported the state trial court's denial of this claim, and fairminded jurors could disagree on whether these arguments and theories are consistent with the *Strickland* standard. Thus, this claim does not entitle petitioner to relief.

### 3. Indigent Defender Program in Calcasieu Parish

Petitioner also alleges that counsel was "constructively" ineffective. He claims that his indigent defender is part of a system that is overworked, under resourced, and understaffed. As such, petitioner claims that he need only satisfy the *Cronic* standard and need not prove the prejudice component of the *Strickland* test because the program itself is ineffective. Doc. 7, p. 2.

Petitioner has attached a study regarding the indigent defender system in the area as an exhibit to his supplemental memorandum. Doc. 7, pp. 8–54 (Michael M. Kurth, PhD & Daryl V. Burckel, DBA & CPA, *Defending the Indigent in Southwest Louisiana* (March 2003 revision)). The study examines the provision of legal services to indigents charged with felonies in Southwest Louisiana. Kurth and Burckel investigated the operation of the Calcasieu Parish Public Defender's office, namely its funding, staffing, and case load, as well as the amount of contact that the public defenders have with their clients. Doc.7, p. 9. The report also examined the resources available to the District Attorney's Office, the assignment of judges, and the process of setting the court docket. *Id*. The authors found the following:

> [T]here is a lack of client contact, little investigative and/or legal work performed on cases prior to trial, no use of experts, and minimal assertion of clients' legal rights. We identify two reasons for this: one is a lack of resources . . . , and the other is a judicial process that tolerates delays. The felony caseload of attorney in the Calcasieu Parish Public Defenders Office is three times greater than state caseload guidelines recommend, and the average time from arrest to disposition of a felony case in Calcasieu Parish is 501 days, compared to a national average of 214 days. This slow pace of justice more than doubles the number of open felony cases in the parish.

*Id*. The authors concluded that "the Calcasieu Parish Public Defender's office needs additional funding, but unless this is accompanied by judicial reform the cost of bringing the office into compliance with state and national guidelines will be extremely high." *Id.*

Petitioner has also attached a newspaper article that appeared in the American Press, the local newspaper serving the Lake Charles region. Doc. 7, pp. 56–57 (Vincent Lupo, *System Broken; no fix in sight*, American Press (Oct. 8, 2009)). The article portrays Louisiana's public defender system as "broken" and "ineffective" because of legislative budget cuts and favoritism toward district attorneys' offices. The Public Defenders Office ("PDO") assigns each of its felony attorneys roughly 500 cases at any one time—three times the amount the National Advisory Commission for Defense Attorneys recommends. Doc. 7, p. 57. The executive director of the local PDO explained that the constitutional requirements of effective assistance of counsel were not being met because of the extensive caseload. *Id.*

Even assuming that the Calcasieu Parish indigent defender system suffers from various shortfalls and inadequacies, petitioner fails to satisfy his burden on habeas review. Petitioner presented this argument to the state district court in his application for post-conviction relief. R. at 1950–52. That application was rejected on the merits and this court must review the determinations of the state district court under a very deferential standard of review. "The pivotal question is whether the state court's application of the *Strickland* [or *Cronic*] standard was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Petitioner is not entitled to "federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

A number of arguments and theories could have supported the state district court's decision. Petitioner merely pointed to a study and newspaper article without any exposition of how all criminal prosecutions in Calcasieu Parish are constitutionally suspect. Moreover, petitioner relied on the study for a conclusion it does not reach. At no point in the study do the authors conclude that all appointed counsel are ineffective *per se*.

Even if the authors did draw such a conclusion, petitioner fails to identify concrete instances of constitutional error in his case. While the system as a whole may be subject to criticism, we are not operating in a world of the abstract. Not all public defenders in Calcasieu Parish are ineffective, and certainly some may be extremely competent despite the institutional shortcomings. In order for petitioner's argument to succeed, he must draw a causal link at some point—that is, he must prove that the system sets public defenders up for failure, and he must also prove that his attorney was constructively ineffective because he could not overcome the systemic weaknesses inherent in that system. Such a connection was not articulated to the state district court and has not been articulated in the instant application.

Fairminded jurors could disagree as to whether the state district court reasonably applied the *Cronic* standard. As such, this claim does not entitle petitioner to relief.

### B. Sufficiency of the Evidence:

Petitioner claims that the evidence presented at trial was not sufficient to sustain a verdict of guilt as to the charge of aggravated kidnapping. Doc. 4, p. 5. He does not discuss this claim for relief in his memorandum in support.

A petitioner may be entitled to habeas corpus relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Because the petitioner was previously found guilty, the findings of the trial court are reviewed in the light most favorable to the prosecution. *Id.* at 307. Deference to the trier of fact is appropriate because the trier has undertaken the responsibility to "fairly [] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

Petitioner advanced the same argument on direct appeal, which the state appellate court considered and rejected. On federal habeas review, the "question is whether the state court's application of the [*Jackson*] standard was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

The state appellate court engaged in a lengthy discussion on petitioner's claim that the evidence was insufficient, and it is overwhelmingly clear that the court did not unreasonably apply the *Jackson* standard. *See State v. Gauthier*, 2004-1608 (La. App. 3 Cir. 11/2/05), 916 So.2d 314, 317–19. As such, this claim does not provide a basis for relief.

### C. Confrontation Clause

Petitioner claims that the prosecutor violated petitioner's right to confrontation by soliciting hearsay testimony from Nurse Patricia Seaman. He says that the nurse testified to certain statements made by Perrodin to Dr. Tran, the physician who examined the Perrodin at the hospital. Petitioner further claims that the Nurse Seaman testified to Dr. Tran's medical findings and that Dr. Tran should have testified as to his own findings. Doc. 7, pp. 4–5.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This right prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). A statement is "testimonial" where an objective evaluation of the primary purpose of the statement indicates that the declarant understood that the statement would be possibly used in a future prosecution. *See Davis v. Washington*, 547 U.S. 813, 822 (2006); *See Michigan v. Bryant*, 131 S.Ct. 1143, 1166–67 (2011).

Petitioner raised a similar claim before the state district court on post-conviction review—that Nurse Seaman's testimony violated *Crawford*—and the court rejected the claim on the merits. The question for this court is whether the state district court unreasonably applied the *Crawford* standard.

The state district court did not offer any reasons in support of its decision. However, a number of arguments and theories could have supported its decision.

Nurse Seaman personally participated in the medical examination of the victim. She authenticated and testified to the handwritten notes she alone made on the victim's medical chart. R. at 1485–1494. There is no indication that Dr. Tran made any statement whatsoever, and the state district court could have reasonably concluded the lack of any identifiable statement meant that there was no confrontation issue.

Even if a statement of Dr. Tran's was admitted, the state district court could have reasonably concluded that any such statement was not "testimonial." It could have objectively concluded that the primary purpose of any such statement by Dr. Tran was not reasonably expected to be used in a future prosecution.

Fairminded jurists could disagree on whether these arguments and theories are inconsistent with the *Crawford* standard. As such, this claim does not provide a basis for relief.

**Recommendation**

IT IS RECOMMENDED that the instant application for a writ of habeas corpus be DENIED and DISMISSED WITH PREJUDICE.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation

to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 28th day of May, 2013.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE